UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x
PAUL MITCHELL, :
:
                Plaintiff, :
:
  - against - : 12-CV-0489 (PAC)
:
METRO-NORTH COMMUTER : OPINION & ORDER
RAILROAD, :
:
                Defendant. :
------------------------------------------------------ x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 4, 2014
```

HONORABLE PAUL A. CROTTY, United States District Judge:

        Plaintiff Paul Mitchell ("Mitchell") brings this Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, action against his employer, Defendant Metro-North Commuter Railroad ("Metro-North"), for alleged injuries sustained during his employment.[1]  On July 17, 2013, Metro-North moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  The motion is GRANTED.

## **BACKGROUND**

        Metro-North is a common carrier by rail.  (Defendant's Statement of Fact Pursuant to Rule 56.1(a) ("Def.'s Rule 56.1") ¶ 4.)  Mitchell began working at Metro-North in December 1999, and became a car inspector on December 8, 2003.  (Affidavit of Ioana Wenchell ("Wenchell Aff."), Ex. F at 7.)  As a car inspector, Mitchell performed such tasks as replacing trucks and wheels, buttoning up trucks, and repairing equipment.  (*Id.*, Ex. F at 12.)

        On January 31, 2009, Mitchell was working in the Croton-Harmon station in Croton, New York on the 8am to 4pm shift.  He was assigned to rewire the center pin on an M7 truck in the pit of track South 60, where he had worked before.  (*Id.*, Ex. F at 14-16.)  There was lighting indoors and underneath in the pit.  (*Id.*, Ex. E at 5; *id.*, Ex. F at 18.)  Since he was not trained on

---

[1] Mitchell has voluntarily withdrawn his claim under the Federal Railroad Safety Act, 49 U.S.C. § 20109.  (*See* Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment ("Pl.'s Opp'n") at 1.)

1

rewiring and did not know how to perform this task, he went to look at the wiring on another truck. (*Id.*, Ex. F at 16.) As he was walking back, he tried to avoid a puddle caused by a dripping toilet. (*Id.*) In doing so, he stood up and hit his head on the cage of the car. (*Id.*) He was wearing a hard hat and safety glasses at the time. (*Id.*, Ex. E at 5; *id.*, Ex. F at 16.)

In less than thirty minutes, Mitchell reported the injury to his supervisors. (*Id.*, Ex. F. at 20.) At that time, he felt nauseous, dizzy, and had a headache. (*Id.*, Ex. F at 20.) The general foreman who supervised Mitchell, Arinda Vasquez ("Vasquez"), (*id.*, Ex. F at 9), authored the initial accident report, (*id.*, Ex. G at 10-22; *id.*, Ex. E at 1.) Mitchell told Vasquez that he was experiencing pain in his neck and head but that he did not need any medical assistance. (*Id.*, Ex. F at 21; *id.*, Ex. E at 3.) Mitchell did not mention the toilet leak to Vasquez or in his written statement following the incident. (*See id.*, Ex. E.) Mitchell did not speak to a supervisor about getting medical treatment until two to three weeks after the incident. (*Id.*, Ex. F at 23.)

## DISCUSSION

**I.     Legal Standard**

"Summary judgment is appropriate when, construing the evidence in the light most favorable to the non-moving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The evidence on each material element must be sufficient to entitle the movant to relief as a matter of law. *Vt. Teddy*

*Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  Once the moving party has made an initial showing that no genuine dispute of material fact remains, the nonmoving party may not refute this showing solely by means of "[c]onclusory allegations, conjecture, and speculation," *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003), but must instead present specific evidence in support of its contention that there is a genuine dispute as to material facts, *see* Fed. R. Civ. P. 56(c).  The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.     Analysis

FELA provides "damages to any person suffering injury while he is employed by such carrier [i.e. a railroad in interstate commerce] . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51.  To establish a claim under FELA, the plaintiff must prove the traditional common law elements of negligence:  duty, breach, foreseeability, and causation.  *See Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir. 1993). "At the same time, the plaintiff's burden in making a showing of causation and negligence is lighter under FELA than it would be at the common law because 'the theory of FELA is that where the employer's conduct falls short of the high standard required of him by [FELA,] and his fault, in whole or in part, causes injury, liability ensues.'" *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 86 (2d Cir. 2006) (quoting *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 438-39 (1958)).  Thus, "[t]he test is whether 'the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury." *Ulfik v. Metro-North Commuter R.R.*, 77 F.3d 54, 58 (2d Cir. 1996) (quoting *Rogers v. Mo. Pacific R.R. Co.*, 352 U.S. 500, 506 (1957)).

Metro-North claims that it is entitled to summary judgment because Mitchell has not

offered evidence to establish that Metro-North breached its duty or that Mitchell's injury was foreseeable. Under FELA, an employer breaches its duty to provide its employees with a safe workplace "if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees." *Ulfik*, 77 F.3d at 58. Here, Mitchell claims that Metro-North breached its duty in two ways: by failing to train him on how to rewire a center pin and by not properly maintaining its equipment. (*See* Pl.'s Opp'n at 7-8.) Both claims are meritless. As an initial matter, Mitchell's training is irrelevant. Mitchell did not hit his head while rewiring the pin or while reviewing the other train's wiring.

Mitchell also has not offered any evidence to establish that Metro-North knew or should have known that its equipment was not properly maintained. Mitchell claims that he was forced to sidestep a puddle caused by a dripping toilet on the train above him. (*Id.* at 8; *see* Wenchell Aff., Ex. F at 16.) Vasquez testified that these holding tanks were supposed to be dumped in the yard before the cars were brought into the shop. (Pl.'s Opp'n at 8; *see* Wenchell Aff., Ex. G at 33.) But Mitchell offers no proof that Metro-North had actual or constructive notice of the leak. He merely stated in his interrogatory responses that "the toilet was leaking for at least the two prior shifts in light of the work that had already been performed on the train." (*See id.*, Ex. C ¶ 4.) Yet Mitchell also testified that he could not remember how long he worked in the pit before the incident, (*see id.*, Ex. F at 15), and that he did not have any other assignments with respect to that train, (*see id.*, Ex. F at 16.) Although Mitchell may rely on his own testimony in opposing summary judgment, the Court need not credit Mitchell's testimony when it is "contradictory or rife with inconsistencies such that it was facially implausible." *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 726 (2d Cir. 2010). Thus, Mitchell has failed to offer evidence suggesting that Metro-North knew or should have known about the leak.

Even if Mitchell could show that Metro-North negligently trained him or maintained the

pit, he would still have to show that bumping his head was within the range of foreseeable risk from that negligent conduct. *See Sinclair*, 985 F.2d at 76-77. For example, in *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432 (4th Cir. 1999), a seaman alleged negligence when he hit his head on the pilot house doorway while running to respond to a problem with the boat's winch on the back deck. The Fourth Circuit held that "it was not foreseeable that the winch in any way could implicate a seaman's failure to duck when going through a doorway that presumably he had gone through hundreds of times before without incident." *Id.* at 438; *see Long v. CSX Transp., Inc.*, 849 F. Supp. 594, 597 (S.D Ohio 1993) (holding that it was not reasonably foreseeable that an employee would be injured "while cleaning an axle by suddenly standing upright in response to an exceptionally loud noise and striking his head"). Similarly, it was not foreseeable that Mitchell would hit his head on the train as a result of having to sidestep a puddle. Metro-North cannot be held liable for Mitchell's failure to watch where he was going.

The Court recognizes that Mitchell need only show the existence of the slightest negligence to avoid dismissal on summary judgment. *See Ulfik*, 77 F.3d at 58. But even this low burden cannot extinguish the requirement that Mitchell produce some evidence that Metro-North's negligence caused his injuries. Mitchell has failed to meet this burden since the record lacks any facts to establish that Metro-North breached its duty or that his injuries were a reasonably foreseeable consequence of any alleged breach.

## CONCLUSION

For the forgoing reasons, the Court GRANTS Defendant's motion for summary judgment. The Clerk of Court is directed to enter judgment and to terminate this case.

Dated: New York, New York  
      February 4, 2014

SO ORDERED

_____  
PAUL A. CROTTY  
United States District Judge

5